**In re Linda Dawn REX, Debtor.**

**Linda Dawn Rex, Plaintiff,**

**v.**

**Florida Elks Children's Therapy Services, Inc., Defendant.**

**Bankruptcy No. 8:03–bk–14992–8G7.**
**Adversary No. 8:06–ap–352–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 8, 2007.

Malka Isaak, Law Office of Malka Isaak, Tampa, FL, for Plaintiff.

Richard W. Hennings, Richard W. Hennings PA, Tavares, FL, for Defendant.

### ORDER ON MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by the Defendant, Florida Elks Children's Therapy Services, Inc.

The Debtor, Linda Dawn Rex, commenced this adversary proceeding by filing a Complaint to Determine Dischargeability of Debt. The debt at issue arises from a Promissory Note executed by the Debtor in 2000.

In its Motion to Dismiss the Complaint, the Defendant contends that the Bankruptcy Court lacks subject matter jurisdiction to determine the dischargeability of the debt. (Doc. 4, ¶¶ 20–26). According to the Defendant, the issue has already been decided by the State Court in an action initiated by the Defendant to collect the debt.

## Background

On July 1, 2000, the Debtor executed a Promissory Note payable to W.G. Walter or Mary Sue Ludwig in the amount of $30,000.00.

On August 1, 2002, the Note was assigned to Florida Elks Children's Therapy Services, Inc. (the Defendant).

On July 18, 2003, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

On her schedule of unsecured creditors filed with the petition, the Debtor listed Brett Swigert, P.A. as a creditor holding a claim in the amount of $30,000.00. The basis for the debt, according to the schedules, was a "promissory note to W.G. Walters." Brett Swigert was the Defendant's attorney.

The Debtor received her discharge on November 20, 2003, and the bankruptcy case was closed on the same date.

On May 6, 2005, the Defendant filed an action in the Circuit Court of Lake County, Florida, to collect the Note from the Debtor.

The Debtor answered the Complaint filed in the State Court action, and alleged as an affirmative defense that the debt evidenced by the Note had been discharged in her bankruptcy case.

On November 9, 2005, the State Court entered an Order striking the Debtor's affirmative defense of discharge.

On December 5, 2005, the Debtor filed a Motion to Reopen her bankruptcy case. On the same date, the Debtor also filed a Motion to Impose Sanctions against the Defendant and the Defendant's attorney for violating the permanent injunction contained in the Debtor's discharge.

On July 13, 2006, following the conclusion of an evidentiary hearing, the Court entered an Order Denying the Debtor's Motion to Impose Sanctions against the Defendant and the Defendant's attorney.

On July 19, 2006, the Debtor filed an Amendment to Schedule F in her bankruptcy case, and listed the Defendant as a creditor based on the Promissory Note.

On August 8, 2006, the Debtor filed a Complaint to Determine Dischargeability of Debt. In her Complaint, the Debtor alleges as follows:

> 7. Due to the fact that Defendant was listed as a creditor at a later date, it did not have an opportunity to file a suit to determine dischargeability of the debt.
>
> 8. The purpose of the filing of this lawsuit is to enable the Defendant to contest the dischargeability of the debt, if it has grounds to assert such a claim and wishes to do so.

(Doc. 1). The Debtor further alleges that the debt owed to the Defendant is a dischargeable debt.

In response, the Defendant filed a Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction. In the Motion, the Defendant alleges as follows:

> 23. The Bankruptcy Court does not have jurisdiction to determine the issue

of discharge after the state court has assumed jurisdiction of the subject matter.

24. When the state court struck the affirmative defense, the state court determined that the defense of discharge in bankruptcy was not a valid defense to the relief sought in the complaint.

25. The issue of dischargeability has been determined by the state court.

26. The Bankruptcy Court lacks subject matter jurisdiction to determine the issue of discharge in bankruptcy decided by the state court.

(Doc. 4). The Defendant therefore concludes that this Court should defer to the State Court in this action, because the State Court had acquired jurisdiction over the issue of dischargeability first. (Transcript, p. 6).

## Discussion

The issue presented by the Motion to Dismiss is whether this Court possesses subject matter jurisdiction to determine the dischargeability of the debt owed by the Debtor to the Defendant.

### A. Concurrent jurisdiction—Dischargeability actions

■ Bankruptcy Court jurisdiction is governed in part by 28 U.S.C. § 1334. At the time that the Debtor filed her bankruptcy case, Subsection 1334(b) of title 28 of the United States Code provided:

**28 USC § 1334. Bankruptcy cases and proceedings**

. . .

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). "Section 1334(b) establishes the general proposition that state and federal courts have concurrent subject matter jurisdiction over civil proceedings that arise under, arise in, or are related to a bankruptcy case." *In re Franklin,* 179 B.R. 913, 919 (Bankr.E.D.Cal.1995)(quoted in *In re Toussaint,* 259 B.R. 96, 100 (Bankr.E.D.N.C.2000)).

■ It is generally acknowledged that dischargeability actions constitute proceedings that "arise under" a bankruptcy case within the meaning of § 1334(b), and that bankruptcy courts therefore share concurrent jurisdiction with state courts over certain dischargeability actions. *In re Franklin,* 179 B.R. at 919–20; *In re Toussaint,* 259 B.R. at 101. "[T]he general rule, subject to certain exceptions, is that state courts have concurrent jurisdiction with federal courts with respect to § 523 dischargeability actions." *In re Merritt,* 2001 WL 1699697, at *3 (Bankr.M.D.N.C.).

■ The general rule of shared or concurrent jurisdiction applies specifically to actions to determine the dischargeability of unscheduled debts under § 523(a)(3) of the Bankruptcy Code. *In re Everly,* 346 B.R. 791, 796 (8th Cir. BAP 2006); *In re Candidus,* 327 B.R. 112, 116–17 (Bankr. E.D.N.Y.2005); *In re Toussaint,* 259 B.R. 96, 100 (Bankr.E.D.N.C.2000)("[B]ankruptcy courts and state courts generally have concurrent jurisdiction for deciding dischargeability issues arising from a debtor's failure to list a creditor.")

■ In this case, the Debtor alleges in her Complaint that that she filed her bankruptcy petition on July 18, 2003, that she received her discharge on November 20, 2003, and that she amended her schedules to add the Defendant as a creditor on July 19, 2006. (Doc. 1, ¶¶ 1, 2, 3). The Debtor

further alleges that the Defendant did not have an opportunity to file a dischargeability action in the bankruptcy case because it "was listed as a creditor at a later date." (Doc. 1, ¶ 7).

In its Motion to Dismiss the Complaint, the Defendant alleges that it did not receive notice of the bankruptcy or a copy of the discharge from the Court, and that it did not receive actual notice of the bankruptcy from the Debtor's attorney. (Doc. 4, ¶¶ 4, 5).

Based on the foregoing, it appears that the dischargeability action at issue involves § 523(a)(3) of the Bankruptcy Code, which excepts unscheduled debts from discharge in accordance with the conditions set forth in the section. 11 U.S.C. § 523(a)(3). Consequently, the Court finds that the State Court and the Bankruptcy Court possessed concurrent jurisdiction to determine the dischargeability of the debt claimed by the Defendant.

## B. The Rooker–Feldman doctrine

■ The existence of shared of concurrent jurisdiction may be altered, however, as a result of the application of the Rooker–Feldman doctrine. According to the doctrine, "federal district courts lack subject matter jurisdiction to review the judgments of a state court." *Romagosa v. Thomas,* 2006 WL 2085461, at *4 (M.D.Fla.). "*Rooker–Feldman* provides that federal courts, other than the United States Supreme Court, do not have jurisdiction to review the final judgments of state courts." *Amos v. Glynn County Board of Tax Assessors,* 347 F.3d 1249, 1266 n. 11 (11th Cir.2003). The doctrine "is a set of legal principles grounded in federalism and res judicata which serves to prevent unsuccessful state court litigants from re-litigating state court cases in federal district court." *Romagosa v. Thomas,* 2006 WL 2085461, at *4.

The Rooker–Feldman doctrine has been specifically applied in the bankruptcy context to deprive the bankruptcy court of subject matter jurisdiction over a claim that challenged a prior state court judgment on a dischargeability issue. *In re Burns,* 306 B.R. 274, 277 (Bankr.E.D.Mo.2004)(citing *In re Ferren,* 203 F.3d 559, 560 (8th Cir.2000)).

In *In re Candidus,* 327 B.R. 112, 119 (Bankr.E.D.N.Y.2005), for example, the Court held that where "a state court assumes and exercises jurisdiction to determine that an unscheduled debt is nondischargeable, the Rooker–Feldman doctrine is applicable and a bankruptcy court is devoid of jurisdiction to correct a possible erroneous determination." In *Candidus,* the state court had "rejected the affirmative defense of a discharge" and entered a judgment in favor of the creditor. *In re Candidus,* 327 B.R. at 115.

■ Four criteria must be satisfied for federal jurisdiction to be barred under the Rooker–Feldman doctrine: "(1) the party in federal court is the same as the party in state court; (2) *the prior state-court ruling was a final or conclusive judgment on the merits;* (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state-court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." *Morris v. Wroble,* 206 Fed.Appx. 915, 917–18 (11th Cir.)(citing *Amos v. Glynn County Board of Tax Assessors,* 347 F.3d at 1266 n. 11)(Emphasis supplied). See also *In re Hartnett,* 2004 WL 3170445, at *1 (S.D.Fla.).

■ "By definition, a final judgment must have been reached in a state court action in order for the doctrine to apply." A preliminary injunction, for example,

does not constitute a final adjudication of the parties' ultimate rights for purposes of the Rooker–Feldman doctrine. *In re Quality Laser Works,* 211 B.R. 936, 942 (9th Cir. BAP 1997).

In this case, the Defendant contends that the State Court decided the issue of dischargeability by striking the Debtor's affirmative defense of discharge. (Doc. 4, ¶¶ 23–26).

Under the circumstances of this case, however, the Court cannot determine that the Order striking the Debtor's affirmative defense is a "final or conclusive judgment on the merits" for purposes of the Rooker–Feldman doctrine.

No copy of the State Court's Order striking the affirmative defense appears in the record of this dischargeability action. It appears from the pleadings and the record, however, that the Order was entered as a discovery sanction after the Debtor failed to produce certain documents requested by the Defendant. (Doc. 4, ¶¶ 14–20; Transcript, p. 5). It was not entered following a hearing on the merits of the Defendant's action to collect on the Promissory Note. Further, Defendant acknowledges that no activity has occurred in the state court action since the entry of the Order striking the Debtor's defense. (Transcript, pp. 5–6). Accordingly, it appears that no judgment has been entered by the State Court adjudicating the Debtor's liability on the debt claimed by the Defendant.

The Defendant has not shown that this Court lacks subject matter jurisdiction in this dischargeability action, because it has not shown that a "final or conclusive judgment on the merits" has been entered by the State Court. The Court finds, therefore, that the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied.

## Conclusion

The Debtor commenced this adversary proceeding by filing a Complaint to Determine Dischargeability of Debt. The issue before the Court is whether the Complaint should be dismissed based on this Court's lack of subject matter jurisdiction.

It appears that the Debtor's Complaint involves § 523(a)(3) of the Bankruptcy Code, which relates to the dischargeability of unscheduled debts. Bankruptcy Courts and State Courts possess concurrent jurisdiction to determine the dischargeability of such debts.

Despite its initial shared jurisdiction, the Defendant contends that this Court no longer has jurisdiction to determine the dischargeability of the debt in this case, because the State Court already decided the issue by striking the Debtor's affirmative defense of discharge.

The Defendant has not shown, however, that the Order entered by the State Court is a "final or conclusive judgment on the merits," as required for application of the Rooker–Feldman doctrine. Consequently, the Court finds that the doctrine does not bar this Court from determining the dischargeability of the debt claimed by the Defendant. The Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied.

Accordingly:

**IT IS ORDERED** that the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by the Defendant, Florida Elks Children's Therapy Services, Inc., is denied, without prejudice.