**In re KEWANEE BOILER CORPORATION, n/k/a/ Oakfabco, Inc., Debtor.**

**No. 86 B 16937.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 2, 2002.

Frederick W. Stein, Oak Brook, IL, for Plaintiff.

James K. Toohey, Ross & Hardies, Chicago, IL, for Defendant.

Barbara A. Sellinger, Chief Labor & Litigation Counsel, American Standard, Inc., Piscataway, NJ, Trustee.

## MEMORANDUM OPINION

JACK B. SCHMETTERER,
Bankruptcy Judge.

The Chapter 11 bankruptcy Plan of Debtor Kewanee Boiler Corporation n/k/a/ Oakfabco, Inc. (hereinafter "Oakfabco") was confirmed on March 10, 1988, and the case was closed on March 14, 1997. Oak-fabco moved to reopen its bankruptcy so as to file herein an Adversary Complaint against American Standard, Inc. ("ASI") for alleged violations of 11 U.S.C. § 524(a)(2). ASI objected. The bankruptcy case was reopened for the limited purpose of briefing whether jurisdiction would lie here to hear Oakfabco's proposed Adversary Complaint that it seeks leave to pursue. The parties filed herein on August 14, 2001, a Stipulation as to various exhibits pertinent to their arguments.

The parties dispute the scope of an agreement they entered into herein in 1994 to settle claims then filed by ASI, and ASI disputes jurisdiction here to resolve that dispute as part of Oakfabco's proposed Adversary proceeding. Those issues relate to tort claims of plaintiffs allegedly harmed by products manufactured pre-bankruptcy by Kewanee Boiler.

For reasons discussed below, Oakfabco's motion is now fully granted and leave is given by separate order to file and present the Adversary Complaint alleging violations of § 524(a)(2).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Prior to 1970, Kewanee Boiler was controlled by ASI. In 1970 ASI sold Kewanee Boiler's assets to Kewanee Boiler Corporation, a newly formed Illinois corporation. Under the Asset Purchase Agreement and a subsequent undertaking, Kewanee Boiler Corporation agreed to indemnify and hold ASI harmless for certain costs, liabilities, debts, or other obligations. Kewanee Boiler and its assets were subsequently sold again in 1975, and in 1986 both Kewanee Boiler and its corporate parent filed Chapter 11 Bankruptcy Petitions, including the above-titled case. During this bankruptcy, all of Kewanee's assets and its name were sold and the Debtor Kewanee Boiler was renamed Oakfabco, Inc.

ASI was not scheduled as a creditor and apparently received no notice of the bankruptcy until several years after Plan confirmation when Oakfabco moved to amend its schedules to list ASI among a number of other unscheduled creditors.

In 1991, having been scheduled and notified about the bankruptcy, ASI filed a proof of claim herein for $200,000, alleging Oakfabco's liability under an indemnity agreement. Oakfabco objected to ASI's claim and ASI then filed a related Adversary Complaint. ASI and Oakfabco agreed to settle the ASI Adversary Complaint and claim in May of 1994. Under their settlement agreement documented through correspondence, ASI was allowed an unsecured claim of $20,000. The parties then submitted two agreed Orders: one allowed the claim for $20,000 and the other dismissed the Adversary Complaint with prejudice. Both Orders were entered and docketed on June 7, 1994.[1]

In 1996, ASI began to submit claims to Oakfabco asserted under their indemnification contract referred to above. Those claims purportedly arose from products liability suits filed by persons claiming that they were injured by Kewanee boilers. Presently at least three state court cases pend claiming such injuries, and other similar cases have been settled or are anticipated in the future. For all of those cases, ASI seeks indemnity under the 1970 indemnification agreement.

Oakfabco contends that all of ASI's rights under the indemnification contract were discharged in 1988 by the Plan confirmation under § 1141(d)(1) of the Bankruptcy Code and that ASI is barred from pursuing these claims by the statutory discharge injunction arising under 11 U.S.C.

§ 524(a)(2). It also argues that the 1994 settlement orders resolved any issues now sought to be raised.

ASI counters that the 1994 settlement agreement did not, and could not encompass all possible future claims under the indemnification agreement, and that the effect of § 524(a)(2) could not by the 1988 confirmation order bar an unscheduled creditor having no notice of the bankruptcy case or plan.

The parties disagree on whether jurisdiction lies here to decide issues raised by the proposed Adversary Complaint. Oakfabco argues that bankruptcy courts have jurisdiction to enforce and interpret their own orders, and that this is the best forum to interpret the 1994 settlement agreement. However, ASI contends that: (1) jurisdiction lies in state court because Oakfabco has asserted its protection under § 1141(d)(1) as an affirmative defense there; (2) there is no basis for bankruptcy jurisdiction over the present dispute because the 1994 agreed orders did not incorporate the settlement agreement between the parties; and (3) state courts should be deferred to because of the complexity of issues and the extensive litigation that has already taken place in those courts (though no motion has yet been filed here for abstention). Although the parties were admonished to restrict their argument to the issue of jurisdiction, both parties argued the merits of their respective positions. Nonetheless, this Opinion focuses solely on the jurisdiction issue.

## DISCUSSION

### Core Jurisdiction lies over the Proposed Adversary Complaint

Congress has given federal district courts exclusive jurisdiction over bank-

---

**1.** Additional litigation here was begun in 1995 requiring decision as to reach of the discharge injunction, what constitutes a "claim" in bankruptcy, and related matters involving questions about the complex area of "future claims." Those issues were dealt with in *Kewanee Boiler Corp. n/k/a OakFabCo v. Kenneth Smith,* 198 B.R. 519 (Bankr.N.D.Ill.1996).

ruptcy cases: "Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). District courts have original but not exclusive jurisdiction to hear civil proceedings "arising under" Title 11 or those that "arise in a case" under Title 11 or are "related" to a case under Title 11. "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts are authorized to refer bankruptcy cases to bankruptcy judges under 28 U.S.C. § 157(a). Pursuant thereto, this District has a standing referral order as to all bankruptcy cases under local Internal Operating Procedure 15(a).

■■■ A case "arises under" Title 11 when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code. 1 *Collier on Bankruptcy* ¶ 3.01[4][c][i] (Matthew Bender 15th ed. rev.2001). Proceedings "arising in" a case under Title 11 include matters that, though not explicitly mentioned in the Code, would not exist outside of bankruptcy. *Collier, supra,* ¶ 3.01[4][c][iv]. Related matters are generally causes of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors. *Matter of United States Brass Corp.,* 110 F.3d 1261, 1269 (7th Cir.1997).

■■■ Proceedings arising in or under Title 11 are core proceedings, while related matters are noncore. *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990) (citations omitted). The distinction between core and noncore proceedings is important because it defines the contours of a bankruptcy judges' power as either adjudicatory (core proceedings) or advisory (noncore proceedings) and determines whether the bankruptcy judge may or must abstain from hearing a matter. *Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1235 (3rd Cir.1994) (bankruptcy judge can only enter judgment in core matter unless parties consent to adjudication); 28 U.S.C. § 1334(c)(1) (permissive abstention); 28 U.S.C. § 1334(c)(2)(mandatory abstention).

■■■ Proceedings flowing from a core matter are themselves core matters. *In re Williams,* 256 B.R. 885, 892 (8th Cir. BAP 2001). Moreover, bankruptcy courts have core jurisdiction to interpret and enforce their orders. *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 917 (7th Cir.2001); *Matter of Weber,* 25 F.3d 413, 416 (7th Cir.1994) (bankruptcy court's interpretation of its own confirmation order is entitled to the same deference as accorded any court construing its own judgments).

Section 1141(d)(1) provides in relevant part:

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation ...

Pursuant to § 103(a) of the Code, the discharge allowed under § 1141(d)(1) is implemented by Section 524(a) which provides in relevant part:

A discharge in a case under this title:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section ... 1141 ... of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...

11 U.S.C. § 524(a)(1)–(2).

■ Proceedings to enforce the statutory injunction under § 524(a)(2) are core proceedings under 28 U.S.C § 157(b)(2)(*O*), and willful violations of § 524(a)(2) are punishable or otherwise enforceable by judges using authority under § 105(a) of the Code. *In re Hardy,* 97 F.3d 1384, 1389–90 (11th Cir.1996); *In re Jacobs,* 149 B.R. 983, 989 (Bankr. N.D.Okla.1993). A Seventh Circuit Panel in *Cox* held that a bankruptcy court is the best forum to deal with cases involving violations of the statutory injunction, such as the violation alleged here. *Cox,* 239 F.3d at 916. Indeed, debtors would find little comfort in filing a bankruptcy in a court that lacked jurisdiction to enforce § 524(a)(2). *See Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 6 F.3d 1184, 1194 (7th Cir.1993) (making a similar observation regarding an injunction order issued under the Bankruptcy Act). Core jurisdiction therefore lies here to determine whether ASI has violated § 524(a)(2) of the Bankruptcy Code by filing indemnity pleadings against Oakfabco in state courts.

There is also no doubt that Oakfabco's objection to ASI's claim was a core proceeding under 28 U.S.C. § 157(b)(2)(B) under which matters dealing with claims allowance and disallowance are core proceedings. The claims allowance process is integral to the restructuring of the debtor-creditor relationship, *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), and bankruptcy courts must have core jurisdiction over claims

objections in order to effectively administer the debtor's bankruptcy effectively. Thus, core jurisdiction lies here to interpret the orders disposing of the ASI claim.

Accordingly, core jurisdiction lies over the proposed Adversary case under § 157(b)(2) and also lies here to consider whether the injunction under § 524(a)(2) of the Code was violated.

### *Oakfabco's Defense Asserted in State Courts Did Not Nullify Federal Bankruptcy Jurisdiction*

■ ASI contends that Oakfabco waived any claim of federal jurisdiction under § 1141(d)(1) by raising the discharge as an affirmative defense in state court.

As with any debtor confronted by a creditor seeking to collect on what might be a discharged debt after a bankruptcy case is closed, Oakfabco had several options in the state court cases against it: (1) to assert the discharge as an affirmative defense in cases filed by ASI in state court; (2) to remove to federal court under 28 U.S.C. § 1452(a) either the dischargeability defense or the entire state court cause of action; (3) to move to reopen its bankruptcy case under 11 U.S.C. § 350(b) (since "a case may be reopened ..., to accord relief to the debtor, or for other cause"); and (4) to bring an Adversary Complaint in bankruptcy court to enforce the statutory injunction under § 524(a)(2) of the Code. *See In re Stucker,* 153 B.R. 219, 222 (Bankr.N.D.Ill.1993) (citation omitted) (choices available to individual debtor litigating dischargeability of claim). These options are not mutually exclusive; Oakfabco could choose any or all of them. But ASI contends that Oakfabco is precluded from pursuing options 3 and 4 because it raised the discharge as an affirmative defense in state courts and failed to

remove the state court actions within timely limits.

ASI cites *In re Toussaint,* 259 B.R. 96 (Bankr.E.D.N.C.2000) and *In re Jeffries,* 191 B.R. 861 (Bankr.D.Or.1995) as authority for its position. Both cases dealt with facts analogous to the present case and held that federal court jurisdiction was vitiated because the debtors chose to raise their discharge as an affirmative defense in state court and failed to remove their cases in time. However, the logic of those cases is unpersuasive. They reasoned that because state courts have concurrent jurisdiction over civil proceeding issues under § 524(a)(2), therefore federal jurisdiction never attaches unless the debtor files a timely removal. *Toussaint,* 259 B.R. at 101; *Jeffries,* 191 B.R. at 863. This analysis is flawed. While federal and state courts have concurrent jurisdiction over some civil proceedings arising under the Bankruptcy Code, there is nothing in § 1334 or § 1452 that requires a debtor to remove his case under § 1452 or face the loss of relief in a federal court under bankruptcy law.

The only authority cited by *Toussaint* and *Jeffries* is based on § 28 U.S.C. 1446 and did not involve a bankruptcy case. (In *United States ex. rel Walker v. Gunn,* 511 F.2d 1024 (9th Cir.1975), a Ninth Circuit Court panel interpreted 28 U.S.C. § 1446 to bar untimely removal of a criminal case.)

The wording of §§ 1334 and 1452 contradicts the holdings of *Toussaint* and *Jeffries.* For example, § 1334(a) places exclusive jurisdiction over bankruptcy cases in the district court, and hence in the bankruptcy judges under the standing referral order in this District. A case reopened under § 350(b) would come under federal jurisdiction delegated to the bankruptcy judges. Therefore, the debtor's option to revive its bankruptcy case cannot be precluded by the debtor's prior decision to raise its discharge as an affirmative defense in state court. Such preclusion would render § 350(b) and § 1334(a) a nullity. Further, § 1334(b) allows bankruptcy judges to provide a single forum to decide all issues related to the debtor's estate. This statute evinces Congress' intent that bankruptcy courts have comprehensive power to deal with cases under Title 11. Nothing in the statute shows that Congress intended for bankruptcy judges to defer to state courts that are hearing an issue arising under Title 11. Moreover, § 1452(a) expressly provides that either a debtor or creditor may opt to have concurrent proceedings under Title 11 pend in both state and federal court because removal is optional: "A party *may* remove any claim or cause of action … to the district court … if such district court has jurisdiction of such claim or cause under section 1334 of this title." 28 U.S.C. § 1452(a). (emphasis supplied.)

ASI seeks in effect to rewrite § 1334(c) to add a second mandatory abstention which would bar debtors from invoking rights under the Code once they raise their discharge as an affirmative defense in state court and fail to effect timely removal to federal court. Such a result would deprive debtors of fundamental protections under the Code. The legislative history of § 524(a) shows that it was enacted to prevent debtors from having their discharge nullified by post-bankruptcy collection efforts in state court. *Cox,* 239 F.3d at 915; *In re Walker,* 180 B.R. 834, 841 n. 9 (Bankr.W.D.La.1995) (citing legislative history of § 524) (citation omitted). "[T]he injunction [under § 524(a)(2) ] is to give complete effect to the discharge and to eliminate any doubt as to the effect of the discharge as a total prohibition on debt collection efforts." *Walker,* 180 B.R. at 842 (quoting House and Senate reports).

The Bankruptcy Code does not show that Congress intended to qualify or limit the injunction under § 524(a)(2) based on the extent of a debtor's efforts to defend in state court. *See In re Dabrowski*, 257 B.R. 394, 407 (Bankr.S.D.N.Y.2001) (noting that a debtor's participation in state court is not a consideration in the application of § 524).

Thus, Oakfabco's efforts to raise the discharge as a defense in state courts has no bearing on whether its assertion that ASI violated § 524(a)(2) can be heard here.

### *Jurisdiction over this Case lies under § 524(a)(2) as well as from the 1994 Orders Entered to Settle the Adversary and Claims*

An injunction under § 524(a)(2) is a "perpetual injunction" that covers any creditor scheduled by the debtor whether the creditor files a proof of claim or not. *Matter of Hendrix*, 986 F.2d 195, 197–98 (7th Cir.1993). The statute automatically makes a discharge an injunction of the court that granted the discharge. *Cox*, 239 F.3d at 916; *Hendrix*, 986 F.2d at 198. Any violations of that injunction may be treated as civil contempt punishable by the bankruptcy judge's authority to enforce its orders under § 105(a) of the Code and Rule 9020(b) Fed. R.Bankr.P. *Cox*, 239 F.3d at 916–17. Therefore, § 524(a)(2) leaves responsibility for enforcing the injunction in the court that issued the discharge. *Id.* at 916.

As to whether ASI was or is bound by the § 524(a)(2) injunction even though the Plan was confirmed before it was noticed about the bankruptcy is a most important issue, as is the contention of Debtor that ASI became bound subsequently to confirmation under doctrines of equitable estoppel and waiver. But those issues to be determined during the litigation do not detract from this Court's jurisdiction to determine the application and reach of § 524(a)(2), jurisdiction that enables resolution of Debtor's arguments through the litigation process. Likewise, ASI's argument that lack of notice of the bankruptcy completely bars Debtor from asserting discharge through Plan confirmation is another issue to be determined by litigation. For the present, it is sufficient to recognize that a bankruptcy judge has permanent jurisdiction to determine the reach and affect of § 524(a)(2), and that includes jurisdiction to decide whether it applies to a particular creditor.

However, ASI argues that the settlement Orders issued in 1994 did not incorporate the settlement agreement between it and Oakfabco, and therefore there is no independent basis of jurisdiction to hear the present dispute between the parties. In this regard, it relies on *Lucille v. City of Chicago*, 31 F.3d 546 (7th Cir.1994). ASI's reliance on *Lucille* is misguided since that case is clearly distinguishable. Lucille was a former city worker who sued the City for violating a consent decree barring politically motivated firings. The parties settled the matter before trial and Lucille was reinstated. The Order entered by the district court contained some but not all provisions of the settlement agreement. Four years later Lucille filed a motion asking the court to enforce the agreement. He claimed that the agreement included pension benefits and vacation pay that would have accrued if he was not fired. The district court interpreted the settlement agreement and denied Lucille's petition. On appeal, a panel of the Seventh Circuit held that the district court's decision to include some but not all of the settlement agreement in its judgment meant that the court had chosen to retain jurisdiction to enforce only those portions of the agreement contained in the judgment. *Id.* at 548. Thus, the opinion

concluded that the district court was without power to interpret the unincorporated portions of the settlement contract, absent an independent source of federal jurisdiction. *Id.* at 549.

First, as *Lucille* itself recognizes, a court has authority to enforce whatever agreement was contained in the judgment. Accordingly, by reference to the claim and adversary pleadings in litigation that were settled herein, and to the motions and orders resolving them, at least that record is within this Court's authority to interpret.

Secondly, unlike *Lucille,* there is a source of jurisdiction here independent of the settlement agreement reached in 1994. As the opinion in *Hendrix* stated, Section 524(a)(2) made "the bankruptcy proceeding a continuous, ongoing proceeding as to anyone bound by the injunction." *Hendrix,* 986 F.2d at 198. Whether ASI was bound under § 524(a)(2) and if so to what extent remains to be decided, but there is no question this Court has jurisdiction to decide such questions under that provision. Consequently, jurisdiction lies here to decide whether ASI has violated the statutory injunction against attempting to collect on Oakfabco's prepetition debt.

Moreover, ASI's contention that there is no jurisdiction to reopen this case to deal with any claims not covered by the 1994 agreement is circular and unavailing to block jurisdiction since the scope of that agreement remains to be decided. It presently appears from the briefs that the only efforts to memorialize the agreement to settle the 1994 Adversary Complaint may have been a single paragraph in a letter from counsel for Oakfabco acknowledging the agreement, and another letter from the same counsel giving a list of insurers that might be liable to ASI. (Response of ASI, exhibits 12 and 22). ASI's arguments concerning the scope of agreement must be dealt with in the new Adversary litigation, but do not show lack of jurisdiction. Indeed, application of *Lucille* may affect whether this Court can interpret an agreement not filed, even though the ruling in that case does not block jurisdiction in this proceeding. *Lucille* itself made clear that this Court has authority to interpret and enforce at least those aspects of the settlement that are of record, consisting of pleadings in connection with the disputed claim and Adversary proceeding, motions to settle them and orders that were entered. As to whether related non-record correspondence should be considered can be dealt with at trial.

It must be noted that jurisdiction of a bankruptcy court in Chapter 11 is more limited after confirmation. In *Pettibone Corp. v. Easley,* 935 F.2d 120 (7th Cir.1991), a Seventh Circuit panel opinion held jurisdiction lacking to annul the automatic stay after a debtor's Chapter 11 Plan is confirmed and the stay had therefore expired. *See Id.* at 122 and cases cited. *See also In re Craig's Stores of Texas,* 38 BCD 146, 266 F.3d 388 (5th Cir.2001) (related jurisdiction of bankruptcy judge did not survive Chapter 11 Plan confirmation.) Bankruptcy judges are not ombudsmen licensed to adjudicate every post confirmation problem affecting a debtor or its creditors, but can only decide matters after confirmation within their more narrow jurisdiction. The exercise of jurisdiction over the present case does not violate this principle because § 524(a)(2) of the Code provides a permanent and continuing basis for jurisdiction over Oakfabco's claim that ASI is attempting to collect a discharged debt. Thus, unlike *Pettibone* where there was no independent basis for continued federal jurisdiction, here there is post confirmation authority to determine whether ASI violated the § 524(a)(2) injunction, and also authority to interpret

the impact of settlement orders entered here.

### Rooker–Feldman Does Not Apply Here

The Rooker–Feldman doctrine is derived from two cases: In *Rooker et al. v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court held that lower federal courts could not review judgments of state courts, even if the judgments were unconstitutional. This principle was solidified in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), where the Supreme Court held that claims that are "inextricably intertwined" with state court judgments cannot be reviewed by lower federal courts.

Although the *Rooker–Feldman* doctrine was not briefed, this issue merits discussion. *Dabrowski*, 257 B.R. at 406 (Rooker–Feldman doctrine can be raised at anytime by the parties or sua sponte by the court).

▮▮▮▮ The *Rooker–Feldman* doctrine bars federal courts other than the Supreme Court from reviewing final judgments issued by state courts. *Rizzo v. Sheahan*, 266 F.3d 705, 713 (7th Cir.2001). *Rooker–Feldman* is limited to instances where the specific injury complained of in federal court arises from the state court judgment. *Id.* If there had been a state court judgment construing the scope of Oakfabco's discharge, most authority holds that *Rooker–Feldman* would apply even if that judgment were erroneous. *Id.* However, *Rooker–Feldman* does not appear to apply in this case since there has been no such judgment noted in the briefs filed here.

### Sua Sponte Abstention
### is not Warranted

The only remaining issue raised by the briefs is whether to voluntarily abstain *sua sponte* from hearing this matter so that the various state court judges can decide whether ASI violated the injunction under § 524(a)(2). Though not formally moved by ASI, consideration has been given to its discussion suggesting abstention. Permissive abstention over proceedings arising under Title 11 is governed by 28 U.S.C. § 1334(c)(1) which provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for State law, from abstaining from hearing a particular Proceeding under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

▮▮▮▮ Discretionary abstention applies to both core and noncore proceedings, *see In re Ascher*, 128 B.R. 639, 645 (Bankr.N.D.Ill.1991) and cases cited, while § 1334(c)(2) requires abstention for noncore proceedings that do not otherwise come within federal jurisdiction. *U.S. Brass Corp.*, 110 F.3d at 1267. Courts have considered a number of factors to guide a decision whether to voluntarily abstain from hearing a case:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core

bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 6 F.3d 1184, 1189 (7th Cir.1993).

Those factors should not be applied inflexibly. *Id.; See also In re Franklin,* 179 B.R. 913, 928 (Bankr. E.D.Ca.1995). Because of paramountcy of policies set by Congress in the bankruptcy system, permissive abstention is rarely appropriate in bankruptcy cases. *Matter of Cash Currency Exchange, Inc.,* 762 F.2d 542, 556 (7th Cir.1985). Thus, a bankruptcy court with core jurisdiction should narrowly consider the foregoing factors in favor of having the matter heard in bankruptcy court. Further, a court should generally not abstain from interpreting its own orders except under "extraordinary circumstances," because the court that entered a judgment is usually best suited to interpret it. *Chicago, Milwaukee,* 6 F.3d at 1194.

ASI asserts that the dispute between it and Oakfabco should be decided in the various state courts presently hearing asbestos litigation. There are currently three separate proceedings underway and judging by the ASI's briefs there could be many more such actions in the future. ASI argues that the states have a paramount interest in the state law tort claims at issue in these cases. It further argues because of the complexity of the issues involved and the resources expended prosecuting those cases, Oakfabco's motion to pursue its Adversary case here should be denied.

However, the mere presence of state law issues does not mean that jurisdiction over bankruptcy issues should be left to the state courts. *See Matter of L & S Indus. Inc.,* 989 F.2d 929, 935 (7th Cir. 1993) (presence of state law issues, while important, is not enough for permissive abstention). Otherwise, the central goal of bankruptcy which is the centralized administration of a debtor's estate would usually be impossible to achieve since most bankruptcy cases involve some issues of state law. *Ascher,* 128 B.R. at 647.

Moreover, saying that a case involves important and complex issues of state law does not make it so. State tort law issues do not predominate here. The key issues presented is whether ASI's claims or possible claims against Oakfabco were settled or discharged in bankruptcy, and whether the statutory injunction under § 524(a)(2) bars the proposed Adversary proceeding. It cannot be in the interests of either party to litigate those issues in several different state forums with the potential for differing results, as opposed to having them heard in a single forum where all the relevant events occurred. *See* 11 U.S.C. § 305(a)(1) (court should not abstain unless abstention is in the interest of the debtor and creditor). Moreover, counsel for Oakfabco has alluded to the fact that need to defend many cases may force Oakfabco to file a new bankruptcy petition. If so, more resources of this court and those of our brethren in the state courts would be wasted when this matter appears capable of resolution in this forum.

Therefore, abstention is not warranted.

### CONCLUSION

In light of the foregoing, Oakfabco's motion to file its proposed Adversary Com-

924

plaint against ASI is allowed. It may now file that pleading and cause summons to be served. A status call in the new Adversary will be set by separate order.

Other issues and defenses argued but not discussed above will be dealt with during the forthcoming litigation.